JAMES BARNES ET AL., APPELLANTS, V. MANLIUS LUCAS, APPELLEE.

FILED DECEMBER 31, 1923. No. 22602.

Vendor and Purchaser: FRAUD: RELIEF IN EQUITY. Where parties in a contract for the sale of a large tract of land agree orally as to the price to be paid per acre, and the seller in reducing the contract to writing, for the purpose of gaining an inequitable advantage to himself, puts the purchase price in the contract at a gross sum and largely in excess of the amount computed on the number of acres at the price agreed upon, and the contract as thus written is signed by both parties, the act of the seller constitutes such fraud that a court of equity will on application of the defrauded party cancel the contract and relieve him from performance.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*John N. Dryden* and *W. M. Glenn,* for appellants.

*W. D. Oldham* and *Sinclair & McDermott, contra.*

Heard before MORRISSEY, C. J., LETTON and DAY, JJ., SHEPHERD, District Judge.

DAY, J.

James Barnes and C. M. Doty, copartners, brought this action against Manlius Lucas upon a check for $8,000, given by the defendant to the plaintiffs as an initial payment upon an option contract for the purchase of a tract of land situated in Kiowa county, Colorado. The defense interposed was fraud on the part of the plaintiffs in securing the check, and also fraud in securing the signature of the defendant to the option contract. The defendant prayed that the contract be canceled and held for naught, and that he be relieved from any and all liability on the check. The reply of the plaintiffs denied that any fraud was practiced on the defendant in securing the check or the contract. A trial was had to the court, resulting in findings and judgment in favor of the defendant, Plaintiffs appeal.

The main contention of the plaintiffs is that the judgment is not in accordance with the evidence. The record shows that the defendant is a man over 73 years of age, of very limited education, and unable to compute figures except in a limited way. He was a bachelor, and lived alone on his farm for many years. His home was about 300 miles from the land described in the option contract. He had never been in that section of Colorado before; and had no personal knowledge of land values in that part of the state. By hard work, and most exacting economy, he had accumulated what many would regard as a snug fortune. A few days prior to the signing of the contract and the check, he was met at his home by W. H. Bailey and his son, M. W. Bailey, who were acting as agents for the plaintiffs in procuring pro-

spective customers for plaintiffs in their land business, for which service they received a commission on all sales made to customers procured by them. The defendant, accompanied by the Baileys, was taken to Towner, Colorado, where he was introduced to C. M. Doty, one of the plaintiffs. Defendant was taken to a tract of land consisting of 2,240 acres, and which he was told by Doty was in one body. While there is a dispute between the plaintiffs' evidence and that of the defendant as to the price of the land, the version given by the defendant and his witnesses is entitled to the greater credence. The defendant testified that Doty told him that the different pieces composing the tract were of different prices, but the average price was $27 an acre. He further testified that when he signed the contract he understood the price to be $27 an acre for the entire tract. Both the Baileys in a measure corroborate the defendant in this regard. Both of these witnesses say that the price fixed by Doty when they were looking at the land was $27.50 an acre. Doty testifies that he told defendant that the price of the land was $37.50 an acre for the three sections in the Berges tract, and $27.50 an acre for the other half section. On their return to town defendant asked Doty, "Is that the best you will do on that ranch?" and, when informed that it was, said he would take it. Doty drew up the contract and placed the contract price at a lump sum of $80,400, payable as follows: $8,000 cash; $41,000 on or before March 1, 1920; and $30,800 to be carried back on the land as a first mortgage, due in three years with interest at 6 per cent. From these figures in the contract it is evident that on any view of the evidence a mistake has been made somewhere. The aggregate items of the payments total $79,800, while the price in the contract calls for a payment of $80,400. If the testimony given by Doty as to the agreed price of the land be accepted as the correct version, the total amount would be $80,800. The Baileys further testified in substance that when Doty returned to the office, and was preparing to write the contract, he figured the price at $27.50 an acre; that while he was doing so, Lucas

commenced to figure, but in doing so he put down the price as $37.50 an acre, and finally remarked that it came to a little over $80,000. When Doty discovered that defendant had in mind $37.50 an acre, he immediately changed his figures from $27.50 to $37.50 an acre. The Baileys testified that, when they discovered this, they told Doty that he ought to give them a larger commission, because he "was sticking Lucas for an extra $10 an acre." This was denied by Doty. On the way home the defendant discovered that the description of the land in the contract would not place the land in one body. This the plaintiffs admit, claiming it was an error which they were quite willing to correct. The defendant, on arriving home, went to his attorney, who figured the price per acre over for him, when for the first time he claims he learned that he was paying more than $27 an acre for the land. He immediately stopped payment on the check, and the suit followed. Some of the circumstances seem strongly to support the plaintiffs' claim as to the price per acre given to the defendant, one being that they were paying more than $27.50 an acre for a large part of the land. On the whole, however, we conclude that the weight of the testimony supports the defendant's version of the transaction. But, if we eliminate the question of fraud, it seems quite clear to us that the defendant never consciously agreed to pay more than $27 an acre for the land. That was the price as he understood the proposition. If the plaintiffs did in fact price the land as Doty says, $37.50 for part and $27.50 for part, and it was understood by defendant to be $27, then a condition is presented of a failure of minds to meet, and no contract would in fact exist. It is elementary that in every contract of sale the minds of the parties must meet. The case is one which calls for the interposition of the equity powers of the court. It would be unconscionable to enforce the contract and thus enable the plaintiffs to recover about $20,000 more than the price for which they were willing to sell the land. The insertion in the contract of a higher price than that agreed upon for the purpose of gaining some advantage is a species of

trickery and dishonesty which a court of equity will not tolerate.

The judgment of the district court was right and it is

AFFIRMED.